# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

LAWRENCE LANDOR                                    CIVIL ACTION

VERSUS                                             NO. 14-1610

CPT. JAMES NOBLE                                   SECTION "G"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1] For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

## I.      *Procedural and Factual History*

Petitioner, Lawrence Landor, is a state prisoner incarcerated at the Slidell City Jail, in Slidell, Louisiana.[2] On October 9, 2006, Landor was charged by felony bill of information with

---

[1] 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1, Petition.

distribution of cocaine pursuant to Louisiana Revised Statute 40:967(A)(1).[3] Landor pleaded

not guilty.[4]

Landor was represented by appointed counsel. On April 23, 2007, a motion to continue

for the purpose of hiring his own counsel was denied.[5] The following day, on April 24, 2007,

a motion to suppress suggestive identification was also denied.[6] The facts were summarized

as follows by the Louisiana First Circuit Court of Appeal:[7]

> On June 22, 2006, Detective Cheryl Kaprielian of the St. Tammany Parish
> Sheriff's Office was working undercover for the Narcotics Task Force, which was
> targeting narcotics dealers. A confidential informant contacted the defendant
> to arrange a drug transaction. Detective Kaprielian drove her vehicle to the
> Slidell Post Office on U.S. Highway 190. She exited her vehicle and approached
> the defendant in his vehicle. She purchased from the defendant $100 worth of
> crack cocaine with a net weight of .83 grams. Detective Kaprielian testified at
> trial and identified the defendant in court.

Following a one-day trial, the jury found Ferguson guilty as charged in an 11-1 verdict.[8]

The state filed a multiple bill and a hearing was set for May 22, 2008.[9] On the day of the

hearing, Landor waived his sentencing hearing and was sentenced to 15 years imprisonment

---

[3]State Rec., Vol. 1 of 12, Bill of Information.

[4]State Rec., Vol. 1 of 12, Minute Entry, 10/9/06.

[5]State Rec., Vol. 2 of 12, Trial Transcript, 4/23/07.

[6]State Rec., Vol. 2 of 12, Trial Transcript, 4/24/07.

[7]*State v. Landor*, 10 So. 3d 894 (La. App. 1st Cir. 2009) (Table); State Rec., Vol. 4 of 12, 1st Cir. Opinion, 2008-KA-1577, 5/13/09.

[8]State Rec., Vol. 2 of 12, Trial Transcript, 4/24/07.

[9]State Rec., Vol. 2 of 12, Multiple Bill Hearing Transcript, 5/22/08.

at hard labor.[10]   Landor then pleaded to the multiple bill and the court vacated the sentence and resentenced him in accordance with the multiple offender statute to 20 years imprisonment at hard labor without the benefit of suspension of sentence, probation or parole.[11]

Landor appealed his conviction and sentence to the Louisiana First Circuit Court of Appeals.[12]  In his appeal he asserted two errors: (1) the trial court erred in adjudicating Landor as a multiple offender; and (2) the sentence imposed was illegally excessive.  On May 13, 2009, in an unpublished opinion, the First Circuit Court affirmed Landor's conviction but vacated the multiple offender sentence and remanded for resentencing, finding that the trial court failed to advise the defendant of his right to remain silent or of his right to a formal hearing.[13]  The Court rejected Landor's second assignment of error regarding the illegal sentence.  Landor filed a *pro se* application for review with the Louisiana Supreme Court, which the Court denied on August 18, 2010.[14]

Upon remand to the district court, Landor filed a motion for a new trial and a motion for post-verdict judgment of acquittal.[15]  On July 9, 2010, both of the motions were denied, and

---

[10]*Id.*

[11]*Id.*

[12]State Rec., Vol.  7 of 12, Appellate Brief, 12/15/08.

[13]*State v. Landor*, 10 So. 3d 894 (La. App. 1st Cir. 2009) (Table); State Rec., Vol. 4 of 12, 1st Cir. Opinion, 2008-KA-1577, 5/13/09.

[14]*State ex rel. Landor v. State*, 42 So. 3d 398 (La. 2010); State Rec., Vol. 5 of 12, La. S. Ct. Order, 2009-KH-2092, 8/18/10.

[15]State Rec., Vol. 4 of 12, Motion for New Trial, 7/9/10; Motion for Post Verdict Judgment of Acquittal, 7/9/10.

Landor was adjudicated a third felony offender and sentenced under the multiple offender statute to 20 years imprisonment without the benefit of probation, parole, or suspension of sentence.[16]

On February 3, 2011, Landor again appealed his conviction.[17]  This time, he asserted one error: the evidence was insufficient to support the conviction because (1) the State failed to prove his identity as the person who sold the cocaine; and (2) the trial court erred in failing to suppress his identification.  The First Circuit affirmed his conviction and sentence on June 17, 2011.[18]  The Court declined to consider the asserted error, as the appeal was limited to review of the multiple-offender proceedings and the new sentence, and Landor was not entitled to a second appeal of issues related to the conviction itself.  The Louisiana Supreme Court denied his related writ application on December 16, 2011.[19]

On May 13, 2011, Landor filed an application for post-conviction relief in the state district court, asserting ineffective assistance of counsel.[20]  On October 24, 2011, the state district court denied the application as premature because the Louisiana Supreme Court had

---

[16]State Rec., Vol. 4 of 12, Multiple Bill Hearing Transcript, 7/9/10; Reasons For Judgment, 7/12/10.

[17]State Rec., Vol. 6 of 12, Appellate Brief, 2/3/11.

[18]*State v. Landor*, 2010-1862 (La. App. 1 Cir. 6/17/11) (La. Ct. App. June 17, 2011), not reported in So. 3d; State Rec., Vol. 5 of 12, 1st Cir. Opinion, 2010-KA-1862, 6/17/11.

[19]*State v. Landor*, 76 So. 3d 1202 (La. 2011) (Mem); State Rec., Vol. 10 of 12, La. S. Ct. Order, 2011-K-1483, 12/16/11.

[20]State Rec., Vol. 5 of 12, Application for Post-Conviction Relief, 5/13/11.

not yet denied his writ application regarding his direct appeal.[21]  After the Louisiana Supreme Court's denial, Landor re-urged his application,[22] and the state district court again denied it, without evidentiary hearing, on November 19, 2012.[23]

On February 28, 2013, the Louisiana First Circuit denied his related writ application on the showing made.[24]  On September 20, 2013, the Louisiana Supreme Court also denied Landor relief.[25]

## II.    *Federal Habeas Petition*

On July 11, 2014, Landor filed through counsel a federal petition for *habeas corpus* relief in this court.[26]  In the instant petition, he asserts two grounds for relief: (1) denial of Due Process rights when the trial court unreasonably applied clearly established federal law by failing to suppress the identification; and (2) ineffective assistance of counsel when trial counsel (a) failed to subpoena phone records which would have established whether Landor received a call from the undercover officer; and (b) failed to play an audio recording of the

---

[21]State Rec., Vol. 5 of 12, Order Dismissing Post-Conviction Relief Application, 10/24/11.

[22]In Landor's petition here he alleges that he filed a separate application for post-conviction relief on May 21, 2012.  As the State's response notes, this application is not included in the state-court record.  However, this is of no moment, because it is apparent from the November 19, 2012 order dismissing post-conviction relief that the state court reconsidered his May 13, 2011 application, as well as the "entire record" in denying relief.

[23]State Rec., Vol. 5 of 12, Order Dismissing Post-Conviction Application, 11/19/12.

[24]State Rec., Vol. 5 of 12, 1st Cir. Order, 2013-KW-0006, 2/28/13.

[25]State Rec., Vol. 9 of 12, La. S. Ct. Order, 2013-KP-0668, 9/20/13.

[26]Rec. Doc. No. 1, Petition.

alleged drug deal that was "necessary" to Landor's defense.[27]   The State filed a response in opposition to the petition arguing that: (1) the petition should be dismissed as untimely under federal law; (2) all Landor's claims are unexhausted due to an untimely state court filing; (3) Landor has failed to exhaust his suggestive identification claim by failing to raise it on direct appeal or in seeking post-conviction relief; and (4) alternatively, all the claims lack merit.[28]

### III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, comprehensively revised federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[29] and applies to *habeas* petitions filed after that date.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). The AEDPA therefore applies to Landor's petition.

The threshold questions in *habeas* review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court, *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir.

---

[27]Rec. Doc. No. 1-2, Memorandum in support.

[28]Rec. Doc. No. 10, Memorandum in opposition.

[29]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital *habeas corpus* amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State has raised both the defense that

the petition is not timely filed, and that the claims are not properly exhausted.

## IV.    *Statute of Limitations*

The AEDPA requires a petitioner to bring his *habeas* petition within one year of the date

his conviction became final.[30]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). The Louisiana

Supreme Court denied Landor's writ application regarding his direct appeal of his conviction

on December 16, 2011.  His conviction became final ninety (90) days later, on March 15, 2012,

when he did not file a writ application to the United States Supreme Court.  *Ott v. Johnson*, 192

F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme

---

[30]The statute of limitations provision of the AEDPA provides for other triggers that do not
apply here:

> (1) A 1–year period of limitation shall apply to an application for
> a writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court. The limitation period shall run from the
> latest of—
> A. the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such
> review;
> B. the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws of
> the United States is removed, if the applicant was prevented from
> filing by such State actions;
> C. the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively
> applicable to cases on collateral review; or
> D. the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.
> (2) The time during which a properly filed application for State
> post-conviction or other collateral review with respect to the
> pertinent judgment or claim is pending shall not be counted
> toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), *cert denied*, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Therefore, under a literal application of the statute, Landor had until March 15, 2013, to file his federal *habeas corpus* petition, which he did not do. However, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). By its plain language, this provision does not create a new, full, one-year term within which a federal *habeas* petition may be filed at the conclusion of state court post-conviction proceedings. *Flanagan*, 154 F.3d at 199 n. 1. The Supreme Court has clearly described this provision as a tolling statute. *Duncan*, 533 U.S. at 175–178. Thus, the time which during state-court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period. *Flanagan*, 154 F.3d at 199 n.1.

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. *Pace*, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306–307 n. 4 (5th Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384–85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures'") (quoting *Bennet v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999).

Here, Landor filed an application for post-conviction relief on May 13, 2011. That application was originally denied as premature. However, it appears that Landor filed another application on May 21, 2012,[31] which was denied on November 19, 2012. Because the application was properly filed, only sixty-seven (67) days had run under the time limitations period. There were therefore 298 days left under the time limitations period.

The State argues that Landor's related writ application to the Louisiana First Circuit Court of Appeal was due on January 2, 2013, and that it was not filed until January 3, 2013. Thus, the State contends that the time limitations period began to run again on January 3, 2013, and continued to run for the remaining 298 days, when it expired on October 28, 2013.

The State's argument is unpersuasive and, therefore, unavailing. The State relies on a state district court order attached to Landor's Notice of Intent to Appeal that set the return date for the application as January 2, 2013.[32] Despite this date, in the actual writ application, filed January 3, 2013, counsel for Landor noted: "The Honorable District Court granted said

---

[31]The May 21, 2012 application is not included in the state-court record for this Court's review. However, the State has reviewed a copy that was attached to the appellate-court filings, and inquired with the Clerk of Court regarding an original copy, which could not be attained. The State does not dispute the accuracy of this date, and thus it will be relied on herein.

[32]State Rec., Vol. 5 of 12, Order on Notice of Intent to Appeal, 11/28/2012.

9

Notice of Intent, providing a return date of January 2, 2013. *Undersigned counsel was informed that the Court of Appeals would be closed on January 2, 2013. The Application is now due on January 3, 2013.*"[33]

In its denial, the First Circuit made no mention of the application being untimely or that Landor's allegation regarding the Court's closure was incorrect. In contrast, the First Circuit denied the application "on the showing made," indicating a denial on the merits rather than on timeliness.[34] *See Grislette v. Warden, Winn Corr. Ctr.*, 372 F.3d 765, 775 (5th Cir. 2004) ("[W]hen the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions.").

Therefore, contrary to the State's contention, the limitations period remained tolled throughout the pendency of Landor's First Circuit writ application, and his subsequent and timely filed application to the Louisiana Supreme Court.[35] The Louisiana Supreme Court denied that writ application on September 20, 2013.[36] From that date, Landor had 298 days remaining under the AEDPA limitations period – or until July 15, 2014 – to timely file his federal *habeas corpus* petition. Landor's petition was filed by counsel on July 11, 2014. Thus, his petition is timely.

---

[33] State Rec., Vol. 8 of 12, 1st Cir. Writ App., 2013-KW-0006, 1/3/13 (emphasis added).

[34] State Rec., Vol. 5 of 12, 1st Cir. Order, 2013-KW-0006, 2/28/13.

[35] State Rec., Vol. 9 of 12, La. S. Ct. Writ App., 2013-KP-0668, 3/26/13.

[36] State Rec., Vol. 9 of 12, La. S. Ct. Order, 2013-KP-0668, 9/20/13.

## V.     *Exhaustion of State-Court Remedies*

The State also contends that Landor failed to exhaust his state court remedies as to his first claim regarding the suggestive identification.[37]  "A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519–20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); *Rose*, 455 U.S. at 519–20.

The well-established test for exhaustion requires that the substance of the federal *habeas* claim has been fairly presented to the highest state court.  *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177–79 (2001).

---

[37]The State also urges that all of Landor's claims are not properly exhausted because they were not timely filed in the First Circuit and therefore Landor "failed to fairly present the substance of his claims to the highest court in a procedurally proper manner."  *See* Rec. Doc. No. 10, Memorandum in opposition.  Because this Court rejects the State's argument regarding timeliness and finds that the First Circuit writ application was timely filed, this Court will give no further consideration to this general exhaustion argument herein.  Rather, this Court will consider the State's separate exhaustion argument regarding the suggestive identification claim, as it rests on entirely separate grounds.

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275–78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."*Id.* (citing *Nobles*, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim. *Id.*

Here, the State submits that Landor's first claim, that the trial court erred in failing to suppress the suggestive identification, was not raised in the direct appeal or in the application for post-conviction relief. In his federal petition, Landor "contends that the substance of each claim has been fairly presented to all of the state courts in the context of claims of ineffective assistance of counsel."[38] After a thorough review of the record, the Court finds that Landor has not fully exhausted this claim.

While the claim regarding the trial court's error in failing to suppress the identification does appear in two filings in the state-court record, these filings are not sufficient to make a showing that the claim was fully and fairly presented in a single full round of State appellate review.

---

[38]Rec. Doc. No. 1-2, Memorandum in support.

For example, this claim was originally raised in Landor's appeal of the *second* First Circuit decision in his case–the decision that affirmed his resentencing.[39]  The First Circuit declined to consider the claim, noting that the appeal was limited to review of the multiple-offender proceedings and the new sentence, and not a vehicle for another review of issues relating to the conviction itself.[40]  Thus, Landor essentially waived this issue by failing to raise it in his initial appeal.

There was also a *pro se* writ application submitted to the Louisiana Supreme Court on the initial direct appeal that raised this claim.[41]  However, this Court's review of the record does not show that any *pro se* filing raising this claim accompanied the original appeal to the Louisiana First Circuit.  Therefore, any subsequent direct application to the Louisiana Supreme Court requesting review of this claim was procedurally improper and fails to satisfy the requirement of one full round of appellate review.

Nor did Landor sufficiently raise the claim on post-conviction review.  The May 13, 2011 application (the only application before this Court, and also the one referred to in both the October 24, 2011 denial and as the November 29, 2011 denial)[42] only raises a claim related to the introduction of the photograph upon which the identification was based, under

---

[39]State Rec., Vol. 6 of 12, Appellate Brief, 2/3/11.

[40]*State v. Landor*, 2010-1862 (La. App. 1 Cir. 6/17/11) (La. Ct. App. June 17, 2011), not reported in So. 3d; State Rec., Vol. 5 of 12, 1st Cir. Opinion, 2010-KA-1862, 6/17/11.

[41]State Rec., Vol. 12 of 12, *Pro Se* Writ Application.

[42]If Landor contends that this claim was raised in the May 21, 2012 application that is missing from the state court record, he must, in some way, prove up that application to this Court to show that the claim has in fact been fully exhausted.

the umbrella of an ineffective assistance of counsel claim.  Specifically, the petition, filed by

counsel, states:[43]

### IMPROPER PRESENTATION OF BUREAU OF IDENTIFICATION PHOTO

At trial it was determined that a [Bureau of Identification] Photo from
years earlier had been used for identification of the defendant.  It contained
prejudicial information regarding Mr. Landor's criminal history.  It was noted
that the photo was suggestive but that three other witnesses had testified to it
previously.  It was apparent that trial counsel did not inspect the photographic
lineup prior to the middle of the trial.

That claim, which involves the introduction of the photograph in connection with trial

counsel's alleged ineffectiveness, is not the same as the claim before this Court regarding the

trial court's error in failing to suppress the detective's identification of Landor that relied upon

the photo.  The claim presented to this Court is a question of the permissibility of an allegedly

suggestive identification, whereas the claim vaguely stated in Landor's post-conviction relief

petition appears to question his trial counsel's failure to object to the photograph itself.  These

claims rely on two very different legal theories.[44]  Thus, Landor has clearly failed to exhaust

his state-court remedies with respect to this claim.

Additionally, any attempt by Landor to now bring the claim in the state courts would

clearly be denied based on the state's procedural rules.  For instance, because Landor has

already sought and been denied post-conviction relief in the state courts, any new application

asserting this additional claim would be denied as repetitive.  *See* La.C.Cr.P. art. 930.4(E) ("A

successive application may be dismissed if it raises a new or different claim that was

---

[43]State Rec., Vol. 5 of 12, Application for Post-Conviction Relief., 5/13/11.

[44]Because the application was prepared by counsel, this Court will not afford Landor the
latitude required of courts in broadly construing *pro se* petitions.

inexcusably omitted from a prior application."). Further, because Landor's conviction became final in 2012, any new application would also be rejected by the state courts as untimely. *See* La.C.Cr.P. art. 930.8(A) (establishing a two-year statute of limitations for state post-conviction applications). Therefore, the claim is defaulted in this federal proceeding. *See, e.g.*, *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where ... the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred.").[45]

There are limited circumstances in which a *habeas* petitioner may still be afforded federal review of a defaulted claim. Specifically, this Court may review a defaulted claim if petitioner demonstrates either (1) the existence of "cause" and "prejudice" or (2) that a failure to address the claim will result in a "fundamental miscarriage of justice." *See, e.g.*, *Bagwell v. Dretke*, 372 F.3d 748, 756-57 (5th Cir. 2004). Here, Landor can demonstrate neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

---

[45]The State has not specifically raised a procedural bar as a defense in this case. This is likely due to the State's mistaken position that all of Landor's claims are not fully exhausted and therefore subject to dismissal. Whatever the reason for the State's failure to raise the procedural bar, it is of no moment because a federal *habeas* court has the discretion to raise a procedural default *sua sponte*. *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006); *Magouirk v. Phillips*, 144 F.3d 348, 357–58 (5th Cir. 1998). Accordingly, Landor is hereby specifically instructed that this Report and Recommendation is notice to him that this Court is *sua sponte* raising the issue of procedural bar. *See Prieto*, 456 F.3d at 519; *Magouirk*, 144 F.3d at 359.

In this case, Landor has not offered any cause for the default that would excuse the procedural bar and the Court's independent review of the record does not support a finding that any factor external to the defense prevented Landor from raising the claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n. 43).  Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and Landor has not alleged any actual prejudice.  *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir. 1977)).

Landor's defaulted claim is therefore procedurally barred from review by this federal *habeas corpus* court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (*habeas* review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[46]

Because Landor has not met the "cause and prejudice" test, this Court should address the claim only if the application of the procedural bar would result in a fundamental miscarriage of justice.  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the

---

[46]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte.* Id.

charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).  The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

*Lucas v. Johnson*, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, the Court finds that Landor has not made the required showing that he is actually innocent in the instant case.  Despite Landor's continued insistence that he did not sell the drugs to the undercover narcotics officer, and despite the affidavits he has attached to his petition in support of his innocence, he has not borne the heavy burden of demonstrating his innocence as a factual matter.  Therefore, he has also not demonstrated a miscarriage of justice that will result from this Court's failure to consider the claim. Accordingly, the claim is procedurally barred in this federal proceeding and is subject to denial on that basis.  This Court now turns to address his sole remaining claim on the merits.

## VI.    *Review on the Merits of the Remaining Claim*

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state-court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28

U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, ––– U.S. ––––, 134 S.Ct. 1697, 1706–07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S.Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially

18

indistinguishable facts. *Williams*, 529 U.S. at 405–06, 412–13; *Penry v. Johnson*, 532 U.S. 782, 792–93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S.Ct. at 1706–07; *Williams*, 529 U.S. at 406–08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24–25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ––– U.S. ––––, 131 S. Ct. 1388, 1398 (2011).

In this final claim, Landor asserts that his trial counsel was ineffective for failing to subpoena his phone records, which he contends would have established whether he actually received a call from the undercover officer. Furthermore, Landor contends his trial counsel was also ineffective for failing to play an audio recording of the alleged drug deal that was "admittedly 'necessary'" to Landor's defense.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.,* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the

reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).   A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state district court rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly deferential:

The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The Supreme Court

then explained:

Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland*

and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted; emphasis added).

Landor has not met his burden of showing that his trial counsel was ineffective under these highly demanding and deferential standards. As noted above, the state district court considered these claims on the merits, summarily finding that Landor had failed to satisfy his burden of proof under *Strickland*.[47] Under the circumstances, this decision was not an unreasonable application of federal law.

First, Landor's trial counsel's failure to subpoena the phone records cannot be said to be constitutionally deficient in light of the evidence available to the trial court. Landor contends that the phone records, if subpoenaed, could have showed whether or not he received a call from the undercover officer at the time allegedly made and from the number allegedly used. There are a few problems with Landor's argument. First, it is clear from the trial transcript that it was the confidential informant who set up the buy, rather than an undercover officer who contacted Landor directly.[48] Second, the trial transcript also illustrates that the identity of the confidential informant was never introduced at trial.

Landor's claim confounds the alleged identity of the caller–in the heading to his claim he states that the phone records would have established whether he received a call from the

---

[47]State Rec., Vol. 5 of 12, Order Dismissing Post-Conviction Application, 11/19/12.

[48]State Rec., Vol. 2 of 12, Trial Transcript, 4/24/07 at p. 69.

*undercover officer*–yet in the body of the argument it refers instead to an alleged call from the confidential informant.  Regardless of the reason for the confusion within his petition, it is clear that it was the confidential informant who set up the buy.  Because neither the identity of the confidential informant nor any details regarding the phone call – including the phone number – were available at trial, it is unclear what the phone records, if obtained, could or would have shown.  The undercover officer did not communicate with the dealer, but rather only accompanied the confidential informant to the scene to buy the drugs.  Furthermore, the only evidence introduced by the State at trial was the identification made by Detective Kaprielian–which was based on her view of the dealer and subsequent photo identification of Landor.  There was no attempt by the State to introduce evidence of a phone call that the phone records could have served to rebut. In light of these facts, it is unlikely that if trial counsel had subpoenaed the phone records that they would have created a reasonable probability that the outcome of Landor's trial would have been different.

Finally, Landor asserts that his trial counsel was ineffective for failing to play an audio recording of the alleged drug deal which counsel represented would be "necessary" to his defense.  This claim also lacks merit.  First, it is clear from the transcript that trial counsel made a strategic decision to not introduce the audio recording.  When the State sought to introduce the recording, trial counsel objected and the State decided not to play the recording.[49]  Landor's contention that if played, the audio recording would show that his voice was "not on the recording" fails to create a reasonable probability that the outcome of his trial would be different.  As Landor notes in his petition, the testimony of the police officers

---

[49]State Rec., Vol. 2 of 12, Trial Transcript, 4/24/07 at pp. 35-36.

established that no one could identify Landor's voice on the recording.[50] Thus, if the recording itself merely illustrated this fact, introducing it would have been redundant.  Under these circumstances, Landor has failed to show that trial counsel was ineffective regarding this issue.

The state courts' decision that Landor's ineffective of counsel claim lacked merit was not an unreasonable application of federal law.  Accordingly, Landor is not entitled to federal *habeas corpus* relief on this claim.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Lawrence Landor be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[51]

New Orleans, Louisiana, this <u>2nd</u> day of _____ July _____, 2015.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[50]State Rec., Vol. 2 of 12, Trial Transcript, 4/24/07 at p. 47.

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.